# Yerkes's Appeal.

1. A power of attorney ceases to be operative upon the death of the party giving it, unless it is coupled with such an interest as renders it irrevocable. The interest necessary to render such a power irrevocable must be an interest in the subject upon which it is to operate, not an interest in that which is produced by the exercise of the power.

2. A certain decedent having died, his widow, heirs and next of kin executed a paper empowering certain agents to examine into a certain instrument purporting to be the decedent's will, and to take such action as in their judgment might be expedient. Said parties further undertook to contribute towards the expenses which might be incurred, in proportion to the amounts they should realize from the estate. *Held*, that the paper in question gave no interest in or right to anything, nor did it pro-

99   401
159   222
99   401
163   39
99   401
19 SC ⁵ 71
99   401
211   ⁵125
99   401
36 SC ⁴330

vide for compensation payable out of any particular fund, that hence, viewed as a power of attorney, it lacked every essential ingredient of irrevocability and that therefore on the widow's death it ceased to be operative as against her estate.

3. In pursuance of the above paper the agents above named procured an issue to test the validity of the will. This terminated by agreement in a verdict in favor of the will. The widow subsequently elected to take against the instrument, paid one half of the costs of litigation up to that time incurred, and subsequently died. *Held*, that prior to her death the agreement had been, by the understanding of all parties fully executed, and that the liability of all parties for the expenses of litigation, was therefore at an end, and that hence there was no liability on the part of the widow's estate for further expenses incurred upon the opening of the verdict and continuance of litigation after her death.

4. In the above case the executors of the widow after her death notified all parties that she had elected to take against the will, and that her estate had no interest in the litigation and would not be responsible for any expenses incurred therein, and thereupon her name was withdrawn as a party to the issue. *Held*, that under these circumstances there was no ground for charging the widow's estate with a share of the expenses of litigation subsequently incurred, on the ground that said expenditures were made in the interest or for the benefit of her estate.

5. An executor or administrator who becomes a party to an issue devisavit vel non must look to those who authorized him to engage therein, and cannot charge his expenses to the estate he represents, unless the latter is benefited by the proceeding.

6. In the above case the litigation ended in a judicial determination of the fact that the will in question was a forgery, for which certain parties were indicted and convicted. *Held*, however, that the mere apprehension that if the said will had been established the decedent's estate might have been squandered by the executors named in the forged instrument, and thus the widow's interest impaired, did not constitute under the circumstances a just cause for charging a portion of the expenses of litigation upon said widow's estate.

January 20th and 23d 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY, STERRETT and GREEN, JJ. PAXSON, J., absent.

APPEAL from the Orphans' Court of *Philadelphia county :* Of January Term 1882, No. 62.

Appeal of Silas Yerkes, et al., executors of the will of Mary G. Whitaker, deceased, from a decree of said court, in the matter of the distribution of the estate of her late husband, Robert Whitaker, deceased, whereby the share of Mrs. Mary G. Whitaker therein was charged with one half of certain costs and expenses incurred in proceedings contesting the validity of an alleged will of said Robert Whitaker.

Upon the adjudication of the second account filed by the executors of Robert Whitaker, deceased, the accountants claimed credit inter alia, for the sum of $52,000, paid by them for

counsel fees, costs and expenses in the matter of an issue devisavit vel non, awarded to try the validity of an alleged will of Robert Whitaker. A verdict in said issue had been taken by agreement on April 1st 1879, which was afterwards set aside by the court; the fees and expenses in question were those incurred in litigation after the date of said verdict, which litigation finally resulted in establishing the earlier will, the other being proved a forgery. The expenses incurred in said proceedings prior to said original verdict, amounted to $40,000.

Robert Whitaker died without issue, August 23d 1878. Two wills were presented for probate. Mrs. Mary G. Whitaker, his widow, and certain beneficiaries named in the will earliest in date, thereupon executed the following paper :—

" We, the undersigned heirs, distributees, and next of kin of Robert Whitaker, deceased, do hereby constitute and appoint Henry Cartwright, Alexander M. Fox, and William Elwood Heston, our agents to represent our interests in the matter of the estate of said Robert Whitaker, deceased, and request them to examine into the matter of any instrument purporting to be the will of Robert Whitaker, and take such action as in their judgment may be expedient, and we each agree to contribute towards the expense which they may pay or incur, our respective proportions of such sums, to be rated according to the amounts which may be respectively realized by us from the estate."

Mrs. Whitaker subsequently elected to take against any will of her husband, and to take her interest in his estate under the intestate laws. This being one half of his personal estate, she paid one half the said sum of $40,000, incurred for expenses up to the date of said verdict, viz., April 1st 1879.

Mrs. Whitaker died in July 1879. Upon the setting aside of said compromise verdict, in September 1879, her executors notified the parties to the above recited agreement that the estate of their testatrix had no interest in continuing the litigation, and that they would decline to pay any further expenses that might be incurred thereby; and Mrs. Whitaker's name was thereafter stricken from the record of the said issue.  •

Upon the audit of the said second account of the executors of Robert Whitaker, the executors of Mary G. Whitaker claimed that, under the foregoing facts, the estate of their testatrix was entitled to her share of Robert Whitaker's estate, without any deduction therefrom by reason of the credits claimed by the accountants for expenses incurred in the litigation after the date of the said compromise verdict; and the auditing judge (ASHMAN, J.), so held, and disallowed the said claim for credits in the account.

Exceptions to this finding were filed by the accountants, which were sustained by the court, PENROSE, J., saying, in an

opinion filed, inter alia: "But it is supposed, as the widow of the testator . . . . had the right to take against the will, that therefore she had no interest in the controversy, and the expenses · incurred in its prosecution could not be charged against her share of the estate.

" This overlooks the fact that her share of the estate is only of what remains after the deduction of debts and expenses of administration. Though not bound by the will so far as con-, cerns her proportion of what thus remains, she takes it only *through the executor*. The law does not, upon her election to take against the will, vest in her, *ipso facto*, either the amount or the possession of what she is ultimately to receive; nor is the executor compelled to pay her anything until the settlement of his account and the decree of distribution. Being thus bound by the appointment of executor, it is scarcely accurate to say that a widow has no interest in a controversy which is intended to take from him the custody of the estate and give it to irresponsible or dishonest men. She clearly has an interest, when the attempt is to place it in the hands of criminals and thieves. . . .

" But the allegiance of an executor or administrator is not to widow and distributees alone. Paramount to theirs are the rights of creditors. Non constat when letters are granted, that the estate may not prove insolvent. Required to make oath that it shall be well and truly administered, what avails it, in law in foro conscientiæ, that the widow opposes the making of defence, or even that she affirmatively assents to the claim of the spoliator? As against creditors, the expenses of the defence would unquestionably be allowed as a proper credit. A fortiori as against the widow and all others.

" In this view of the case it is unnecessary to consider the agreement entered into between Mrs. Whitaker and the heirs and legatees of her husband, relative to the expenses of the litigation contemplated at the time of its execution. Treating it, however, as it is treated in the adjudication, not simply as a power of attorney revocable by death, but as an agreement inter partes, under seal and in consideration of mutual promises, and carried into execution by the incurring of expenses and the assumption of legal liabilities, we are unable to see that the compromise made by the parties with the so-called executor of the forged will can be regarded as an execution of the contract, and an accomplishment of the purpose for which the parties had entered into it.

" It is true that both parties, when they made the settlement with Sheetz, supposed the controversy to be ended; but in this, as the court held, they were mistaken. With no propriety can

this abortive settlement be called a termination of the contro-
versy, within the meaning of the agreement."

The court entered a decree allowing the said credits, as
claimed, the effect whereof was to charge the distributive share
of Mary G. Whitaker's estate with one half the amount thereof.

The executors of Mary G. Whitaker thereupon took this
appeal, assigning for error, inter alia, the said decree.

*George W. Thorn* and *George W. Biddle* (*M. Hampton
Todd* and *George Biddle* with them), for the appellants.—Mrs.
Whitaker's estate was properly charged with her share of the
general expenses of the administration.   But she had no interest
in the protracted litigation over the forged will, as she had elect-
ed to take under the intestate law.   The benefits thereby conferred
on a widow cannot be taken away by forcing her against her
consent into an expensive litigation to sustain one will and de-
stroy another, under neither of which she took anything, on the
mere anticipation of the executors that she may lose every-
thing.   The real parties in interest must bear the burden of the
contest: Dietrich's Appeal, 2 Watts 332 ; Koppenhaffer *v.*
Isaacs, 7 Watts 170 ; Geddis's Appeal, 9 Watts 284 ; Mumper's
Appeal, 3 W. & S. 441 ; Royer's Appeal, 1 Harris 569 ; Lan-
dis's Estate, 1 Phila. Rep. 528 ; Rankin's Appeal, 10 W. N. C.
235.

It is claimed Mrs. Whitaker continued liable, under the
agreement with the parties interested in sustaining the first will,
to pay a share of all the expenses, proportionate to the share
she finally realized from her husband's estate.   But the execu-
tors of Robert Whitaker's estate, the appellees here, were not
parties to that agreement, and cannot enforce any supposed
liability under it, especially in a proceeding in distribution in
the Orphans' Court: Wickersham's Appeal, 14 P. F. S. 67.
Moreover, the so called agreement was a mere power of attor-
ney to the agents therein named, revocable, and in law revoked
by Mrs. Whitaker's death, subject to reimbursing the agents
for their outlay up to that time.

*John G. Johnson*, and *C. S. Pancoast*, for the appellees.—
This is not the ordinary case of a contest between the legatees
of two different wills, or a contest as to the distribution of an
estate in the hands of honest executors—in such cases it is proper
that the parties directly interested in the contest should pay
the costs of such contest.   Here the effort was on the part of
executors to rescue the *entire estate* from the hands of conspi-
rators, who had constituted themselves executors in a forged
will.   They had cleverly provided for the nephews and nieces
in the forged will, and while it was really at the widow's in-

terest that the conspirators levelled their scheme, the common danger of all was the embezzlement and spoliation of the entire estate by those into whose hands, as executors, it would pass under the forged will. Had the executors, after her death, abandoned their litigation, and yielded the estate to the conspirators, the widow, notwithstanding her election to take under the intestate law, would have had no "share of the estate" out of which to pay costs, or anything else; whereas, the result of the executors' defence of the estate is, that she receives, after deducting her share of the expenses in controversy, over $200,000. If the executors had abandoned the defence, she or her executors would have been the first to charge them with negligence. In Rankin's Appeal, 10 W. N. C. 235, one of the cases relied on by the other side, it is said in the opinion of the court: "When the interests of all parties under a testamentary instrument are menaced, it may be the duty of the executor or trustee therein named to uphold and defend it."

But Mrs. Whitaker, and her representatives, are bound by the agreement of August 1878, which was not a mere revocable power of attorney, as contended, but a mutual agreement entered into by numerous parties for their joint protection, on the faith of which legal proceedings were begun, in Mrs. Whitaker's lifetime. The death of one of the parties could not revoke it, as to such party, nor release his or her estate from liability to contribute to the costs of the proceedings down to their final consummation.

The agreement comes within the class of cases excepted from the quality of revocability, because of its being coupled with an interest, not arising out of the paper itself, but antecedent to and giving rise to the agreement: Hartley and Minor's Appeal, 3 P. F. S. 212; Blackstone v. Buttermore, Id. 266. In the last case it is said that a power of attorney is irrevocable where "it is to be used as a means of effectuating a purpose necessary to protect the rights of the agent or others"—which is our case. In the following cases contracts similar to the one in hand were held irrevocable, on the principle of mutuality: Chambers v. Calhoun, 6 Har. 13; Edinboro Academy v. Robinson, 1 Wright 210; Hart's Estate, 7 W. N. C. 162; Addison on Contracts 34, §§ 18, 361.

No recovery in personam is here sought, nor do the executors seek to profit by it individually, but merely to protect the rights of the other distributees, in their due administration of the estate.

When costs are incurred for the benefit of the whole estate they are payable out of the estate before distribution: Geddes's Appeal, 9 Watts 285; Scott's Estate, 9 W. & S. 98; Rankin's Appeal, supra.

Mr. Justice STERRETT delivered the opinion of the court, October 2d 1882.

The question in this case is, whether the expenses of litigation in the issue devisavit vel non, amounting to over $50,000, were a proper charge against the estate. It is conceded that the appellees, executors of Robert Whitaker, deceased, expended that amount in counsel fees and other expenses incident to the second trial of the feigned issue, but the contention is that it should not be so credited as to lessen the distributive share to which appellants, as executors of testator's widow, are entitled.

The controlling facts under which the question arises are briefly these : Robert Whitaker died in August 1878, leaving a widow, but no issue surviving him. Two testamentary papers were presented for probate, in one of which the appellees were appointed executors, and in the other, purporting to be of subsequent date, Messrs. Sheetz and Negus were named as executors. In the issue directed to test the validity of the last mentioned paper, a verdict against it was taken by consent of the parties thereto, and the other paper was immediately admitted to probate as the last will of Mr. Whitaker. Nearly six months thereafter, the verdict was set aside and a new trial ordered. After a protracted contest, the paper was again pronounced invalid on the ground that it was a forgery, planned and executed by persons who were subsequently indicted, convicted and sentenced for the crime.

A few days after Mr. Whitaker's death, his widow and certain legatees and devisees under the first will signed a paper appointing Messrs. Cartwright, Fox and Heston as their agents, "to examine into the matter of any instrument purporting to be the will of Robert Whitaker, and take such action as in their judgment may be expedient:" and also agreeing to pay their proportionate shares of expenses attending the same. Pursuant to the authority thus given, the agents above named filed a caveat against the probate of the forged will, and conducted the issue devisavit vel non to its termination in the compromise verdict of April 1st 1879, in favor of the genuine will. The expenses of the proceedings thus far, amounted to $40,000, one half of which was paid by Mrs. Whitaker as her portion under the agreement.

Sometime after her husband's decease, Mrs. Whitaker, in due form, elected to take, against any will of her husband, the one half of his personal estate, etc. to which she was entitled under the intestate laws.

After making a will, wherein she appointed appellants executors, Mrs. Whitaker died in July 1879. In the meantime, parties claiming an interest under the second will, had peti-

tioned the court to set aside the compromise verdict, and in September 1879, the order to that effect was made. Shortly thereafter, appellants notified counsel for the parties named in the above mentioned agreement that the estate, represented by them, had no interest in continuing the litigation, and they therefore declined to pay or become responsible for any further sums of money connected therewith. No dissent to the letter, containing the notice, was expressed by the counsel to whom it was addressed, or by their clients ; and, before the second trial, the name of Mrs. Whitaker, as a party to the feigned issue, was stricken from the record without opposition on the part of those sustaining the contest.

Under these circumstances, can the claim of the appellees be sustained, either by virtue of the agreement of August 1878, or on the ground that the expenses were incurred in the interest and for the benefit of the estate represented by appellants ? We think not. Upon the death of Mrs. Whitaker, the paper referred to undoubtedly ceased to be operative as a power of attorney, so far as her estate was concerned, unless it was coupled with such an interest as rendered it irrevocable. It is well settled that the interest, necessary to render a power irrevocable, must be an interest in the subject upon which it is to operate, not an interest in that which is produced by the exercise of the power : Hunt *v.* Rousmanier's Administrators, 8 Wheat. 174 ; Hartley's Appeal, 3 P. F. Smith 212 ; Blackstone *v.* Buttermore, Ib. 266 ; Lightner's Appeal, 1 Norris 301. The paper in question gave no interest in or right to anything, nor does it provide for compensation payable out of any particular fund. Viewing it as a power of attorney, it is lacking in every essential ingredient of irrevocability. But, it is claimed that it may be enforced as a contract between several parties, by which they are mutually bound to contribute to the common object, and that it became irrevocable as soon as expenses were incurred or legal obligations assumed in furtherance of that object. Conceding for the sake of argument that such would be its legitimate effect, it is a sufficient answer to say, that before the decease of Mrs. Whitaker, the agreement, according to the understanding of all parties thereto, was executed. The will had been established by a formal verdict, and letters testamentary issued to the executors named therein, and all expenses incident thereto were apportioned and paid. The liability of all parties to the contract was thus ended, and no legal reason existed to prevent Mrs. Whitaker from receiving one half of her husband's estate. Before the litigation was resumed, and without assuming any new obligation in relation thereto, Mrs. Whitaker died, and that event was speedily followed by the notice above mentioned.

In view of what has been said, it is evident that no claim

(founded on the agreement of 1878, or anything connected therewith) for expenses incurred after the date of the compromise verdict, can justly be sustained, directly or indirectly, against the estate of Mrs. Whitaker.

Nor do we think the claim in controversy can be sustained on the alleged ground that the expenditures of which it is composed, were made in the interest of Mrs. Whitaker, or for the benefit of her estate. She had elected to take under the intestate law, and was therefore not interested in the result of the feigned issue. Moreover, timely notice was given by her executors that her estate was not interested in the controversy and would not be responsible for any expenses connected therewith. It is well settled that an executor or administrator who becomes a party to an issue devisavit vel non must look to those who authorized him to engage therein, and cannot charge his expenses to the estate he represents, unless the latter is benefited by the proceeding: Dietrich's Appeal, 2 Watts 332; Koppenhaffer v. Isaacs, 7 Ib. 170; Geddis' Appeal, 9 Ib. 284; Mumper's Appeal, 3 W. & S. 441; Rankin's Appeal, 10 W. N. C. 235; Royer's Appeal, 1 Harris 569. The general principle, underlying these cases, is that an executor is not bound to defend his testator's will, but if he undertakes to do so, it must be as the agent and in the interest of those benefited by his action.

But, it is claimed that if the forged will had been established, the estate, or a considerable portion thereof, would probably have been squandered by those who, in that event, would have had the custody and management of it, and hence Mrs. Whitaker's estate was interested in maintaining the genuine will. This position is untenable. Apprehended danger of such disaster, even if well founded, cannot be recognized as a just basis of liability, especially in the case of a party who expressly refuses to participate in the controversy.

We are of the opinion that the learned court erred in allowing the credit claimed by the appellees for expenses of litigation in the issue devisavit vel non.

> Decree reversed at the costs of appellees, and record remitted to the Orphans' Court with instructions to enter a decree in conformity to the foregoing opinion.