## YOUNG, administrator, v. FREEMAN.

1. Where one named as an executor in the will of the deceased testator propounds the instrument for probate in solemn form, without having first propounded it in common form, or without being cited by the heirs or others entitled to do so, and a caveat raising the issue of devisavit vel non is filed thereto, and upon the final hearing of this issue the will is set aside, the propounder is not entitled to attorney's fees and costs incurred in prosecuting the suit.

(a) It appearing that the executor named in the will was not called upon before he offered the will for probate in solemn form to so probate it, the mere fact that in the caveat filed to the probate of the will in solemn form the caveators demanded a probate in this form would not take the case out of the rule laid down above, as the proceedings to probate were not instituted in obedience to or in pursuance of any demand made by the heirs or others having such interest in the estate as to demand probate.

2. Certain of the exceptions to the findings on the questions of fact, as, for instance, the first exception of fact wherein the auditor reports that he finds "that $3,000.00 is a reasonable fee for the services rendered by the attorneys of Mr. Freeman, as propounder of the will and as temporary administrator," are controlled by the ruling on the first exception to the finding on the question of law.

3. Upon consideration of the evidence it does not appear that the court erred in overruling the second and third exceptions to the findings of fact, the findings being, in substance, that the temporary administrator was not negligent in attending to the renting of the farm lands of the estate, and that he was not liable for the loss, injury, or destruction of any of the farming implements or tools or such other item of personal property.

4. Plaintiff excepted to the following finding included in the findings of law of the auditor: "I find that while the temporary administrator was not permitted by law to pay debts of the estate of J. G. Young, still, if he did so and the debts which he paid were legal charges against the estate, he would be subrogated to the rights of these creditors whose claims he paid, and would be entitled to set off such claims against the permanent administrator in a suit brought by the permanent administrator for a settlement of the affairs of the estate." And exception is taken to the judgment of the court overruling this exception. While under the application of the strict rules of law the defendant might not be entitled to the application of the doctrine of subrogation, nevertheless this was a suit in equity brought by the defendant in error, the permanent administrator; and the case being one in equity, all the matters involved should be disposed of upon equitable grounds; and the auditor properly, therefore, allowed the temporary administrator a credit for the amounts paid out as debts of the estate of the testator, where the debts thus paid were legal charges against the estate. Of course, the duties of the temporary administrator are plainly stated in our statutes to be the collection of debts and the preservation of the estate. He has not the right, as a matter of law, to pay off the debts

of the estate; but where he has done so, and the permanent administrator in an equitable suit is seeking to have the temporary administrator turn over the estate to him and to have an equitable accounting, it is proper that complete equity should be done; and in this case the temporary administrator, under application of equitable principles, was entitled to a credit for the amounts expended in meeting and discharging legal charges against the estate, as well as for amounts expended which tended to preserve the estate.

5. The court overruled the exceptions to the following finding of the auditor: " In addition to the above items I find the following amounts were paid by the temporary administrator for liabilities incurred by .Mr. J. G. Young in his life, or by the temporary administrator in operating the farm and in preserving the estate. I further find that these items are correct and legal charges against the estate, and that the temporary administrator is entitled to credit for them;" following which is a list of the items referred to. In view of the ruling made in the foregoing headnote, and the fact that there is some evidence to support this finding of fact, the court did not err in overruling the exceptions to the last-quoted finding.

6. Under the principle laid down in the ruling upon the question of attorney's fees incurred in probating the will in solemn form, the temporary administrator was not authorized to pay out costs and have the same allowed him as a credit in a settlement with the permanent administrator.

7. It does not appear that the court abused its discretion in overruling the other exceptions to the findings of fact, as it can not be said that they were entirely without evidence to support them.

8. The cross-bill of exceptions in this case is dismissed, because it contains no sufficient assignment of error to any ruling made by the court below.

Nos. 2776, 2777.  July 14, 1922.

Equitable petition. Before Judge Roop. Troup superior court. June 8, 1921.

*E. A. Jones, L. L. Meadors, M. U. Mooty,* and *Hatton Lovejoy,* for plaintiff.

*W. C. Wright, A. H. Freeman, S. Holderness, D. J. Gaffney,* and *A. H. Thompson,* for defendant.

Beck, P. J. On the 20th day of August, 1914, James G. Young, of Troup County, died, leaving a will, in which his property was distributed, under the terms of said will, among several different persons. J. Wid Freeman was named in the will as the executor. On August 22, J. Wid Freeman filed an application to probate the will in solemn form. Caveat was filed by the heirs, raising the issue of devisavit vel non. Thereafter Freeman was appointed temporary administrator, and qualified as such, executing the bond required by the ordinary. As temporary administrator he took charge of the estate of the decedent, consisting

of lands and personal property. The litigation over the will continued during a period of three or four years. On the final trial of the issue raised by the caveat the caveators prevailed; and in April, 1918, the plaintiff in error, Frank Young, was appointed permanent administrator, and instituted a suit against Freeman for accounting and settlement. Freeman filed his plea and answer. The case was referred to an auditor, who in due course made his report, and to this report Young, administrator, filed exceptions of law and fact. To the overruling of his exceptions Young filed a bill of exceptions and brought the case to the Supreme Court for review.

1. A part of the auditor's first finding of law which is excepted to is as follows:

" I find in this case that Mr. Freeman, acting by virtue of the authority given him by the will of Mr. Young naming him as executor of his will, presented the will for probate, and that a caveat was filed to the will, and pending the decision and termination of this issue and growing out of this litigation certain costs were incurred for attorney's fees and court costs; that Mr. Freeman as propounder of the will would be entitled to be reimbursed for such expenses, provided they are reasonable and just charges, and provided further that he acted in good faith and to the best interest of the estate. This would be true even though on a final hearing the will was set aside.

" Especially is this true when Mr. Freeman appeared and offered to probate the will in common form, and the ordinary refused this request but instead appointed him temporary administrator, and also when it further appears that the caveat called upon the executor to prove the will in solemn form. Mr. Freeman showed his willingness and desire to prove the will in common form when he appeared before the ordinary in person and made a verbal request to probate the will in common form, and the ordinary told him that it would be unnecessary for him to make a formal written application to do this, as he would not allow this to be done."

The first paragraph of the above is excepted to on the ground that it is contrary to law, and because the person named as executor and who is also a beneficiary under the will could not employ counsel, attempt to probate the will over the caveat by the children of the deceased, lose the case in the trial court, then liti-

gate further, and after an adverse decision make the attorney's fees and costs chargeable upon the estate of the testator. The foregoing exception to the auditor's finding of law was overruled, and error is assigned upon this ruling of the court. We are of the opinion that the exception to the auditor's finding is grounded upon our statutes and the decisions of this court interpreting those statutes. It is alleged in the answer of the defendant that he offered to probate the will in common form, and that the ordinary refused; but we infer further from the pleadings of the defendant that the application to probate in solemn form had already been made. The paragraph of the defendant's answer pleading the facts in reference to the probate is as follows: " On or about the ——— day of August, 1914, the said J. G. Young died leaving a will, in which will the said J. Wid Freeman was named as the executor. Thereafter the said J. Wid Freeman employed counsel, to wit, W. C. Wright, Sid Holderness, D. J. Gaffney, and A. H. Thompson, to represent him in said cause. · The said will was filed with the ordinary of Troup County for probate in both common and solemn form. At the time of the application for probate in common form the petition for probate in solemn form was pending, to which caveat was filed, objecting to probate either in common or solemn form, and demanding that he offer said will for probate in solemn form. Whereupon the ordinary stated that he would not probate the will in common form, but would issue temporary letters of administration upon the applicant, J. Wid Freeman, making good and sufficient bond, which bond was made, and said J. Wid Freeman qualified as temporary administrator of said estate." When the will was offered for probate in solemn form the heirs of the estate had the right to file a caveat to the same, raising the issue of devisavit vel non. At the time of propounding the will in solemn form the executor was not required to do so under the will. In the case of *Davison* v. *Sibley,* 140 *Ga.* 707 (79 S. E. 855), it was said: " If the will previously had not been admitted to probate in common form, and letters testamentary had not been granted thereon, a strong argument might be made against an allowance of counsel fees to the executor for an unsuccessful attempt to probate." We go further and say that not only a strong argument of the character indicated might be made, but an argument that can not be overcome by anything in our

decisions or the law. In the decision just cited it is said: "Where the will has not been proved in solemn form, the executor may be required to file the will, if in his possession, with the ordinary (Civil Code of 1910, § 3862), but he is not compelled to offer it for probate." In order to secure the issuance of letters testamentary it was only necessary for the propounder to prove the will in common form. This may be done "upon the testimony of a single subscribing witness, and without notice to any one the will may be proved and admitted to the record." Civil Code (1910), § 3855. Every person having possession of a will must file the same "with the ordinary of the county having jurisdiction." § 3862. "The right to offer a will for probate belongs to the executor, if one be named." § 3866. In section 3868 it is provided: "The executor must offer the will for probate as soon as practicable after the death of the testator, and must qualify, unless restrained by the will, within twelve months after the same is admitted to record. If he fails to offer it for probate for an unreasonable time, or is not qualified within the time specified, he shall be deemed to have renounced his right as executor." The mandatory provisions of this section requiring the executor to offer the will for probate as soon as practicable after the death of the testator, in light of the other provisions of the code, must be considered as requiring the probate in common form, and not in solemn form. The executor in this case could have probated the will in common form and had letters testamentary issued to him. In the brief of his counsel filed in this court it is urged that he did attempt to prove the will in common form, but that the ordinary refused this, stating that he would not allow the will probated in common form. The named executor was not bound to submit to the advice or ruling upon this question made and given by the ordinary. He could have offered to prove the will in common form, according to the statute; and if the ordinary refused to allow this, as it is alleged, the executor had his remedy, and could have compelled him to comply with the statutes. If the executor, Freeman, had thus proceeded, that is, had offered to probate the will in common form, then the order probating it in common form would have followed as a matter of course, and the executor could have had his letters testamentary without incurring any costs except those provided in the fee bill, and afterwards he might have

been called upon by any one interested in the estate of the decedent to prove the will per testes, or in solemn form. To the application to probate the will in common form no caveat could have been filed or entertained by the ordinary, nor could such a caveat raise any issue which could have been appealed by consent or otherwise to the superior court. *Hooks* v. *Brown,* 125 *Ga.* 122 (53 S. E. 583). " No provision is made for the caveat of a will offered for probate in common form." *Henslee* v. *Stamps,* 137 *Ga.* 114 (72 S. E. 898). We do not mean to say that the executor could not in the first instance offer a will for probate in solemn form, even before he is cited by those interested in the estate to make application for such probate; but if he does do so, he is undertaking something that the law does not require of him; and if he does do so without having been cited by heirs or other interested parties, he does it voluntarily; and if a caveat is then offered by the heirs of the estate, thereby raising the issue of devisavit vel non, and the executor insists upon the probate in solemn form, in effect joining issue with the heirs, and litigation is thereby brought on, and the executor, as to the payment of further costs in addition to that which is prescribed in the statute for probate proceedings, incurs attorney's fees, he brings himself within the general rule as to the payment of his own attorney's fees and the costs in case he shall lose. The general rule is that in a court of law costs are to be paid by the losing party, and not out of the estate or fund in controversy. " In all civil cases in any of the courts of this State (except as provided for by this Code), the party who shall discontinue, fail, or be cast in such suit shall be liable for the costs thereof." Civil Code (1910), § 5980; *Williams* v. *Tolbert,* 66 *Ga.* 127.

As to the attorney's fees in-the case, the case is not brought by the facts within the rule that an executor or administrator may employ counsel and have reasonable attorney's fees allowed out of the estate. Had the will been probated, a different situation would have been presented. Questions similar to that presented here have been discussed in decisions of courts of other States. In the case of Dodd *v.* Anderson, 197 N. Y. 466 (90 N. E. 1137, 27 L. R. A. (N. S.) 336, 18 Ann. Cas. 738), it was held that the administrator of a decedent's estate is not liable in an action at law for the amount expended by one nominated as executor in an instrument

purporting to be decedent's will, in attempting to secure its probate, where the instrument is rejected in the court of first instance because of invalidity, and its decision stands unreversed. In that case it was said : " It may be admitted that one who is named as executor and desires to qualify rests under a moral obligation to offer the putative will for probate, but it is not an imperative legal duty. [We have pointed out above that in this State there is no legal duty resting upon the named executor to propound the will for probate in solemn form, unless cited to do so. His duty in the matter of offering the will for probate extends no further than probating in common form, where he is not cited to offer for probate in solemn form.] That may be done by a devisee, legatee, creditor, or any other person interested in the estate. Code Civ. Proc. section 2614. When a person who is named as executor in such a paper offers it for probate and is met with a contest, he has before him two alternatives, either of which he may adopt. He may cast the burden of the contest upon those who are to be benefited by the probate of the paper, or he may assume the burden himself. If he pursues the latter course, he must be deemed to act with knowledge of the well-established legal rule that even a de jure executor can not bind the estate which he represents by any contract of his own making, and that any liability which he incurs or expenditure which he makes under such a contract is regarded as his personal obligation until it has been allowed to him upon the judicial settlement of his accounts. Austin v. Monroe, 47 N. Y. 360.; Ferrin v. Myrick, 41 N. Y. 315; Matter of Van Slooten v. Dodge, 145 N. Y. 327, 39 N. E. 950; Parker v. Day, 155 N. Y. 383, 49 N. E. 1046; O'Brien v. Jackson, 167 N. Y. 31, 60 N. E. 238. If one who is actually an executor under a valid will can not bind the estate by his executory contracts, we are at a loss to know upon what theory it can be done by one who assumes to act under a paper which is never admitted to probate as a will. When, upon his own responsibility, he joins issue with the contestants of the paper which he offers for probate, he must be deemed to do so with the knowledge that he may be beaten in the contest. This responsibility and risk he may avoid, as we have seen, by transferring the burden of the contest to those who are beneficially interested in procuring probate, or by demanding indemnity from them. . . This may appear to be a harsh result, but it is in-

evitable under the law as it stands. Any other rule would be clearly unjust and equally harsh; for it would cast the financial burden of a contest upon those who win it. Under such a system, an heir or distributee might establish his right to the estate only to realize that it had been heavily charged or entirely absorbed by the putative executor's fruitless attempt to establish a will."

In the case of Kelly *v.* Davis, 37 Miss. 76, the Supreme Court of Mississippi took this view of a question similar to the one we are now dealing with; and it was there said: "The parties contestant are the executor and legatees, seeking to establish the will, on the one side, and the heirs at law and distributees, on the other; the affirmation of the issue being upon the former. To allow the party failing to maintain his suit his costs and expenses against the adverse party, who was without fault, and had merely defended his just right against an unjust and unlawful claim asserted against it, would be unknown to judicial procedure. The result of the litigation establishes that he has but defended his lawful right against an unjust claim asserted against it; and yet, under the rule contended for, he is compelled to pay not only his own expenses for counsel fees and otherwise, but those of his adversary incurred in an effort to deprive him of his rights. Such a rule would be most unjust and oppressive, and the effect of it would be that frequently, though the heir or distributee. succeeds in establishing his right, he would receive little or no benefit from the estate which belongs to him, because it would be heavily charged, if not entirely absorbed, by charges incurred by the executor in endeavoring to deprive him of it entirely." Similar rulings have been made by the courts of last resort of other States. See the cases of Moyer *v.* Swygart, 125 Ill. 262 (17 N. E. 450); Brown *v.* Eggleston, 53 Conn. 110 (2 Atl. 321); Yerkes's App., 99 Pa. 401; Brown *v.* Vinyard, Bail Eq. 460; Fry *v.* Fry, 96 Mo. App. 208, (70 S. W. 172). Other cases to the same effect might be cited. In some of the States courts of last resort have seemingly laid down a different rule, but the sounder view seems to be announced by the authorities quoted and cited above, and these seem to be in accord with our statute properly construed. Consequently the court erred in overruling the exception to the finding of law upon the subject of the allowance of attorney's fees to counsel for defendant in error, incurred by the latter in the proceedings to probate the will.

The foregoing deals specifically with the exceptions to the first finding on the questions of law. But it also disposes of other questions raised by the exceptions to the findings of law in so far as they relate to the question of attorney's fees.

2-7. The rulings made in headnotes 2, 3, 4, 5, 6, and 7 require no elaboration.

8. The defendant in error in the main bill of exceptions filed a cross-bill of exceptions, but it does not appear therefrom that any ruling of the court is specified to which exception is taken. It is recited therein that the defendant filed written objections to the exceptions to the findings both of law and fact, and moved the court to dismiss the exceptions, because they were not complete within themselves; and that he also orally moved the court to dismiss on this and other grounds stated. And it is further recited that the decree shows that the exceptions were considered, and that this was in effect overruling defendant's motion to dismiss. We do not think that this is an exception to any ruling made by the court. If the defendant had desired a ruling on his motion to dismiss, his counsel should have called the court's attention to it, and showed that it had not been passed upon, and have invoked a ruling thereon.

*Judgment reversed on the main bill of exceptions; cross-bill dismissed. All the Justices concur.*