IRWIN, administrator, *v.* PEEK *et al.*

No. 7599. October 20, 1930.

*Joseph M. Jones* and *George & John L. Westmoreland,* for plaintiff in error.

*J. H. McCalla* and *M. D. Irwin,* contra.

HINES, J. Horace H. and E. L. Peek filed their petition against J. R. Irwin as administrator of the estate of Lizzie Peek Irwin, in which they made these allegations: The estate of Lizzie Peek

Irwin is indebted to petitioners in the sum of $2,295.85 for attorneys' fees and expenses incurred by them in the probate of the will made by Lizzie Peek Irwin, wherein she appointed petitioners executors thereof. A copy of the will is attached to the petition. By it she bequeathed to her husband, J. R. Irwin, $3,500 in cash, and directed her executors to pay that sum to him out of any funds of her estate. She further provided that this bequest was to cover and settle any claim he might have against her estate for any money he may have given or advanced her for any purpose whatever, and was made for the purpose of covering, settling, and disposing of any and all claims which under any form he might hold or present against her estate after her death, and was to cover his entire interest in her estate, except such personal property as she might in her will bequeath to him. She directed that her executors pay to certain of her nephews and nieces the amounts set opposite their names. She made to certain legatees bequests of personal property, including one to her husband. She devised and bequeathed the residue of her estate to her brothers and sisters equally. After the death of Lizzie Peek Irwin, her heirs at law and legatees made a demand upon petitioners, as executors, to set up and probate the will in solemn form; and upon said demand being made, petitioners made diligent search and inquiry, and, on their failure to locate said will, believing it to be lost or destroyed without the knowledge or consent of the testatrix, they reported such finding to the heirs at law and legatees, who demanded that petitioners set up and establish a copy of said will in solemn form in lieu of the lost or destroyed original. Upon such demand and upon information, knowledge, and belief concerning the disappearance of said will and their failure to find it, they applied to the court of ordinary to have a copy of the will set up and established in solemn form, in lieu of the lost or destroyed original. Upon notice to the husband and defense made by him, and upon the evidence submitted, the court of ordinary, on October 9, 1923, passed an order admitting the will to record in solemn form and directing letters testamentary to issue to petitioners. The husband as caveator appealed to the superior court from that decision. The heirs at law and legatees under this will demanded that petitioners contest said appeal; and petitioners, believing it to be their solemn duty, under the facts and evidence developed in the court of ordinary,

did undertake to resist said appeal. In setting up said will in solemn form and in resisting said appeal it was necessary for petitioners to employ counsel and pay out attorneys' fees, and incur other expenses as set out in a bill of particulars attached to the petition. They acted in good faith in setting up said will and were free from fault, and they likewise acted in contesting the appeal of the caveator, and are entitled to recover of the estate of Lizzie Peek Irwin the amounts set out in the bill of particulars, as legitimate expenses incurred in probating the will in solemn form and in resisting the appeal of the caveator. They have made demand upon the defendant, as administrator of the estate of Lizzie Peek Irwin, and he refuses their demand to pay these fees and expenses. They pray to recover these sums, with interest and costs.

The defendant demurred generally on the ground that the petition set forth no cause of action, legal or equitable; and certain special grounds. The judge of the superior court sustained the general demurrer and dismissed the petition. The petitioners excepted and took the case to the Court of Appeals. That court reversed the judgment in *Peek* v. *Irwin,* 40 *Ga. App.* 624 (150 S. E. 863). The facts of the litigation growing out of the proceeding to probate the alleged will appear in *Peek* v. *Irwin,* 164 *Ga.* 450 (139 S. E. 27), 168 *Ga.* 442 (148 S. E. 88). This case is now in this court upon the grant of certiorari to review the judgment of the Court of Appeals, on which the defendant assigns various grounds of error. We do not deal specifically with the several assignments of error. We will deal with only one question, upon which these assignments rest. Under the facts alleged, are these petitioners entitled to recover from the administrator of the decedent counsel fees and other expenses incurred by them in their effort to have set up and probated a copy of this putative will? We think this question should be answered in the negative. The next of kin have a right to put the executors on proof of the will, and this has been held a sufficient reason for not giving costs against them. Reeves *v.* Freeling, 1 Eng. Eq. Rep. 185. So this court has held that the next of kin are not generally liable for costs in calling on an executor to prove a will in solemn form, if the proceeding is not vexatious. *Varner* v. *Goldsby,* 22 *Ga.* 302. This court has suggested that if a will be bona fide presented for probate and not fraudulently pressed, and if a caveat to the probate is rejected, the costs should

fall upon the estate. *Francis* v. *Holbrook,* 68 *Ga.* 829. In *Baker* v. *Bancroft,* 79 *Ga.* 672 (5 S. E. 46), it was said: "The usual rule is that, in a court of law, costs are to be paid by the losing party, and not out of the estate or fund in controversy." That ruling was made in a case in which a will was set up and probated in solemn form. In the opinion Chief Justice Bleckley said: "A third point was as to the costs; and it is very likely that to the extent of the costs that would necessarily have accrued on the executor's application to probate the will, the estate ought to bear the burden; but as to any cost that resulted from resisting the probate, the usual rule ought to apply, and the losing party ought to bear it. The general rule laid down by the Code [1882], § 3675 [1910, § 5980] is that the party that fails or is cast must pay the costs. An exception may exist to the extent of the costs of probate that would accrue in the absence of litigation. That seems to be indicated by the case of *Varner* v. *Goldsby,* 22 *Ga.* 302." In the case at bar the propounders lost the case, and the sole heir at law won. Why should not the costs be taxed against the propounders, and not against the estate involved in the litigation? By parity of reasoning, why should the estate be charged with counsel fees and other expenses incurred by the propounders in their vain effort to set up and establish a copy of the alleged will of the intestate, and to have the same probated as her last will?

In *Davison* v. *Sibley,* 140 *Ga.* 707 (79 S. E. 855), this court held that "An executor under a will probated in common form, who is called upon by heirs at law to probate it in solemn form, is entitled to an allowance of reasonable counsel fees out of the estate for such service, notwithstanding the will may be refused probate." That case differs from the case at bar, in two particulars. One is that the instrument there sought to be proved in solemn form had been probated in common form. The other is that the heirs at law of the testator, who would get the estate if the probate of the instrument were rejected, called upon the executor to probate the instrument in solemn form. Under these facts there were good reasons for holding that the counsel fees of the executor, in doing what the heirs called upon him to do, should be paid out of the estate. The heirs at law, when the probate of the instrument propounded was refused, became entitled to all of the estate of the alleged testator, after the payment of debts and any expenses of

administration. Before these heirs could get the estate they had to get rid of the instrument which had been probated in common form as the will of the decedent. In these circumstances this court held that it was the duty of the executor, after proving a will in common form, to offer the same for probate in solemn form, when called upon to do so by heirs, and to press the probate in good faith, by employing counsel and making other necessary preparations for trial; and that in this situation "it would be inconsistent with every principle of reason, law, and justice not to allow the executor, out of the estate of the deceased, the expenses necessarily incurred by him in the faithful discharge of his duty." It was said: "If the will previously had not been admitted to probate in common form, and letters testamentary had not been granted thereon, a strong argument might be made against an allowance of counsel fees to the executor for an unsuccessful attempt to probate. See Dodd v. Anderson, 197 N. Y. 466 (90 N. E. 1137, 27 L. R. A. (N. S.) 336, 18 Ann. Cas. 738." The question with which we are dealing again came before this court for decision in *Young* v. *Freeman,* 153 *Ga.* 827 (113 S. E. 204), where this court, in dealing with the suggestion made in *Davison* v. *Sibley,* supra, said: "We go further and say that not only a strong argument of the character indicated might be made, but an argument that can not be overcome by anything in our decisions or the law." Thus this court adopted the principle suggested that if a will is not previously admitted to probate in common form, and letters testamentary have not been granted thereon, compensation for counsel fees incurred by an executor in an unsuccessful attempt to probate a putative will in solemn form will not be allowed. In *Young* v. *Freeman* this court held: "Where one named as an executor in the will of the deceased testator propounds the instrument for probate in solemn form, without having first propounded it in common form, or without being cited by the heirs or others entitled to do so, and a caveat raising the issue of devisavit vel non is filed thereto, and upon the final hearing of this issue the will is set aside, the propounder is not entitled to attorney's fees and costs incurred in prosecuting the suit." It is insisted that under this ruling a propounder is entitled to attorney's fees and costs incurred in undertaking to probate an instrument in solemn form, either where the instrument has been propounded in common form, or where the executor is

cited by the heirs or others entitled to do so to prove the instrument in solemn form. We do not think that this is the meaning of the ruling quoted. The court had adopted the principle suggested in *Davison* v. *Sibley,* that if a will had not previously been admitted to probate in common form, and letters testamentary had not been granted thereon, counsel fees would not be allowed to the executor where the attempt to probate was unsuccessful. In *Young* v. *Freeman,* this court held that attorney's fees would not be allowed to the propounder in an unsuccessful attempt to probate a will in solemn form, unless it had first been probated in common form, and would not be allowed then, unless the propounder had been cited by the heirs or others entitled to do so to prove the instrument in solemn form. In other words, to entitle a person nominated as executor in an instrument purporting to be the will of a decedent to attorney's fees incurred in an unsuccessful effort to probate it in solemn form, the instrument must first be probated in common form, and the nominated executor must also be cited by the heirs at law, or others entitled to do so, to probate the same in solemn form.

The Court of Appeals in its decision held that the principle ruled in *Young* v. *Freeman* was not applicable, for the reason that a lost or destroyed will could not be proved in common form. In thus holding we are of the opinion that the Court of Appeals misconstrued the meaning of the decision in that case. This will appear from the argument made and the authorities cited to support the ruling made in that case. It was pointed out by Mr. Justice Beck, who wrote the opinion, that no legal duty rests upon the named executor to propound the will for probate in solemn form. He cited section 3862 of the Civil Code, which declares that the executor is not compelled to offer a will for probate, though it be in existence; and section 3868, which declares that the executor must offer the will for probate as soon as practicable after the death of the testator, and must qualify, unless restrained by the will, within twelve months after the same is admitted to record; but he pointed out that this provision required only the probate in common form, and not in solemn form. Again, he said: "We have pointed out above that in this State there is no legal duty resting upon the named executor to propound the will for probate in solemn form, unless cited to do so. His duty in the matter of offering the will

for probate extends no further than probating in common form, where he is not cited to offer for probate in solemn form." In support of the ruling made, Justice Beck cited *Dodd* v. *Anderson, supra*; Kelly v. Davis, 37 Miss. 76; Moyer v. Swygart, 125 Ill. 262 (17 N. E. 450); Brown v Eggleston, 53 Conn. 110 (2 Atl. 321); Yerkes's App., 99 Pa. 401; Brown v. Vinyard, Bail. Eq. (S. C.) 460; Fry v. Fry, 96 Mo. App. 208 (70 S. W. 172). In Kelly v. Davis it was said: "When a person who is named as executor in such a paper offers it for probate, and is met with a contest, he has before him two alternatives, either of which he may adopt. He may cast the burden of the contest upon those who are to be benefited by the probate of the paper, or he may assume the burden himself. If he pursues the latter course, he must be deemed to act with knowledge of the well-established legal rule that even a de jure executor can not bind the estate which he represents by any contract of his own making, and that any liability which he incurs or expenditure which he makes under such a contract is regarded as his personal obligation until it has been allowed to him upon the judicial settlement of his accounts. . . If one who is actually an executor under a valid will can not bind the state by his executory contracts, we are at a loss to know upon what theory it can be done by one who assumes to act under a paper which is never admitted to probate as a will. When, upon his own responsibility, he joins issue with the contestants of the paper which he offers for probate, he must be deemed to do so with the knowledge that he may be beaten in the contest. This responsibility and risk he may avoid, as we have seen, by transferring the burden of the contest to those who are beneficially interested in procuring probate, or by demanding indemnity from them. . . This may appear to be a harsh result, but it is inevitable under the law as it stands. Any other rule would be clearly unjust and equally harsh; for it would cast the financial burden of a contest upon those who win it. Under such a system, an heir or distributee might establish his right to the estate, only to realize that it had been heavily charged or entirely absorbed by the putative executor's fruitless attempt to establish a will. . . The parties contestant are the executor and legatees, seeking to establish the will, on the one side, and heirs at law and distributees on the other; the affirmation of the issue being upon the former. To allow the party failing to maintain his suit

his costs and expenses against the adverse party, who was without fault, and had merely defended his just right against an unjust and unlawful claim asserted against it, would be unknown to judicial procedure. The result of the litigation establishes that he has but defended his lawful right against an unjust claim asserted against it; and yet, under the rule contended for, he is compelled to pay not only his own expenses for counsel fees and otherwise, but those of his adversary incurred in an effort to deprive him of his rights. Such a rule would be most unjust and oppressive, and the effect of it would be that frequently, though the heir or distributee succeeds in establishing his right, he would receive little or no benefit from the estate which belongs to him, because it would be heavily charged, if not entirely absorbed, by charges incurred by the executor in endeavoring to deprive him of it entirely." Justice Beck further said: "Similar rulings have been made by the courts of last resort of other States. . . Other cases to the same effect might be cited. In some of the States, courts of last resort have seemingly laid down a different rule, but the sounder view seems to be announced by the authorities quoted and cited above, and these seem to be in accord with our statute properly construed." As stated by Presiding Justice Beck, there are other decisions than those cited by this court in *Young* v. *Freeman,* supra, which hold that the law does not cast upon the person nominated executor in a will the legal duty of procuring its probate; and that such person, though acting in good faith, is not entitled to payment out of the fund for his services and expenses in an ultimately unsuccessful effort to probate the will against a caveat of the heir upon the ground that the instrument propounded was not the will of the testator, although the propounder is successful in the first instance in procuring its allowance in the probate court. Kelly v. Kennedy, 133 Minn. 278 (158 N. W. 395, L. R. A. 1917A, 448, Ann. Cas. 1918D, 164) ; Andrews v. Andrews, 7 Ohio St. 143; Shaw v. Moderwell, 104 Ill. 64; Re Soulard, 141 Mo. 643 (43 S. W. 617) ; Brown v. Eggleston, 53 Conn. 110 (2 Atl. 321) ; Doan v. Herod, 56 Ind. App. 663 (104 N. E. 385) ; Royer's App. 13 Pa. 569; Sheetz's App., 100 Pa. 197. Ordinarily the contest of a will is one between the heirs and the legatees or devisees; and the executor is under no duty to assume sides in the contest; and if he does so, he can not charge attorney's fees to the estate. Re Hite, 155 Cal. 448 (101 Pac. 443, 21 L. R. A.

(N. S.) 953, 17 Ann. Cas. 993); Re Higgins, 158 Cal. 355 (111 Pac. 8); Re Smith, 165 Iowa, 614 (146 N. W. 836); Titlow's Estate, 163 Pa. 35 (25 Atl. 758); Arnold's Estate, 252 Pa. 298 (97 Atl. 415); Barnard v. Keathley, 230 Mo. 209 (130 S. W. 306).

Manifestly the contest of the will in this case was a contest between the sole heir of the putative testatrix and the legatees under the instrument offered for probate. Under these circumstances the principles announced in *Davison* v. *Sibley* and *Young* v. *Freeman,* supra, should not be stretched so as to allow attorney's fees to the putative executors. The unsuccessful fight of the executors was made for the sole purpose of benefiting the legatees, and of defeating the rights of the heir at law; and they should bear the burden of the contest, or look to those for whose benefit they acted for compensation for attorney's fees expended by them in the interest of the legatees. The fact, if such it be, that the executors could not set up and prove a copy of this will in common form does not entitle them to compensation, out of the estate of the alleged testatrix, for attorney's fees expended by them in their unsuccessful effort to establish and probate a copy of this will in solemn form. Such fact does not take their case out of the principle which we have announced, denying them compensation for such expenses. The fact merely defeats their right to an allowance out of the estate for attorney's fees expended for such purpose. So we are of the opinion that a propounder of an instrument as the last will of a decedent is not entitled to attorney's fees and other expenses incurred by him in an effort to probate such instrument in solemn form, where it had not previously been proved in common form, and not then unless he has been called upon by the heirs at law of the decedent or some person authorized to do so, to prove the instrument in solemn form. The fact that the instrument has been lost or destroyed, and can not be proved in common form, does not entitle the propounder to compensation for attorney's fees and other expenses incurred in his effort to probate the rejected instrument. So we feel constrained to reverse the judgment of the Court of Appeals, and to remand the case to that court for further action in conformity with this decision.

*Judgment reversed. All the Justices concur.*