# Baughman's Estate.

*Wills—Construction — Intention — Surplusage — Repetition of language.*

1. None of the language used in a will should be treated as surplusage unless no other construction is reasonably possible; but this rule has no application where it is clear the language referred to is but a repetition of that which preceded it.

*Trusts and trustees—Charitable use—What use intended.*

2. A gift to a charitable or religious institution without stating the use to which it is to be put, is a gift solely for the uses for which the institution was incorporated.

*Trusts and trustees—Charitable use—Injunction against use otherwise than charitable.*

3. A charitable or religious institution can be enjoined if it undertakes to use the income of a fund, awarded to it for any other than the charitable or religious use for which it was chartered.

4. A court cannot assume that a charitable or religious institution will not be able to use properly the entire income from a fund bequeathed to it.

*Wills—Probate—Gift to charity—Attesting witness—Disinterested witness—Executor or trustee—Acts of June 7, 1911, P. L. 702, and June 7, 1917, P. L. 403—Stockholders of corporate trustee.*

5. An attesting witness to a will, containing gifts for charitable or religious uses, may be named as executor in it and still be a disinterested witness, within the meaning of those words in the Act of June 7, 1911, P. L. 702, and section 6 of the Wills Act of June 7, 1917, P. L. 403, 406.

6. An attesting witness to a will, containing gifts to charitable or religious uses, may be named as trustee in it, and still be a disinterested witness, within the meaning of those words in the Acts of 1911 and 1917, supra, unless he is given such additonal powers as makes him interested in more than the caring for and investing

of trust funds, collecting the income therefrom and distributing it to the charities entitled to receive it.

7. If the trustee named in a will is given a right to select the charity to which the fund or any part of it is to be distributed, he is not a disinterested witness within the meaning of those words in the Acts of 1911 and 1917, supra.

8. The rules above stated apply where the attesting witness is a stockholder in a corporation appointed to act as executor or trustee.

9. Under the Acts of 1911 and 1917, supra, if an attesting witness is interested in a gift to a charitable or religious use, the deed or will remains good except in so far as respects the particular gift as to which the witness was interested.

*Appeals—Assumption that judgment or decree is proper.*

10. Unless sufficient data is given to justify a reversal, the Supreme Court will assume that the judgment or decree appealed from is justified by the law and the facts in the case.

*Conflict of laws — Foreign laws — Proof — Presumption where there is no proof.*

11. In the absence of proof to the contrary, the law of a foreign state will be presumed to be the same as that of this state.

*Trusts and trustees—Purpose of trust—Burden of proof.*

12. The placing of an estate in trust and imposing active duties on the trustee, indicates a purpose in establishing the trust, and the burden of proving that such purpose does not exist rests on him who asserts it.

*Trusts and trustees—Active and passive trusts—Setting aside trust—Gift over—Active duties—Parties in interest.*

13. Deciding whether or not a trust is active does not alone determine whether or not it can be vacated at the instance of those entitled to the income from it. A trust cannot be set aside unless it also appears that there was no legal purpose in establishing it, or that such purpose has been fully accomplished.

14. One entitled to the income of a trust fund will not be sustained in asking that it be set aside and the principal awarded to him, merely because there is no gift over; it must also appear that there is no ultimate purpose of any kind requiring the continuance of the trust, expressed in it or which can be implied from its terms, except the mere payment of the income to the cestui que trust.

15. Before the court can terminate a trust, it must appear that all who are or possibly may be interested in the property are sui

juris, that they have all consented to its determination, and that no other legal reason exists for its maintenance.

16. The right of a man to do as he pleases with his property, subject only to the restriction that no policy of the law shall be infringed, carries with it the right to condition or limit any gift he may make of the property, subject only to like restrictions, and prevents anything being done antagonistic to his gift unless it shall be made to appear that his purpose has been otherwise fully conserved.

Argued April 29, 1924. Appeal, No. 344, Jan. T., 1924, by Elizabeth Fetrow, collateral heir, from decree of O. C. Cumberland Co., sustaining exceptions to auditor's report and dismissing exceptions to final decree of distribution in estate of Joseph J. Baughman, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Decree amended and affirmed.

Exceptions to report of J. Harvey Line, Esq., auditor on exceptions to executors' account and to final decree of distribution. Before McPHERSON, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Exceptions dismissed. Elizabeth Fetrow, a collateral heir, appealed.

*Error assigned* was, inter alia, decree, quoting record.

*John R. Geyer*, with him *Paul G. Smith* and *Brinton & Vale*, for appellant.—Testator did not create a trust for a charitable use: Coggin's App., 124 Pa. 10; Anderson's Est., 269 Pa. 535; Palethorp's Est., 249 Pa. 389; Evangelical Assn.'s App., 35 Pa. 316; Price v. Maxwell, 28 Pa. 23; Amole's Est., 32 Pa. Superior Ct. 636; Flood v. Ryan, 220 Pa. 450.

An active trust is created under the residuary clause of the will and the ultimate purpose of the trust requires its continuance: Crosby v. Davis, 2 Clark 403; Barnett's

App., 46 Pa. 392; Deniston v. Deniston, 263 Pa. 224; Stevens' Est., 267 Pa. 479; Whiteley's Est., 273 Pa. 364; Rodrigue's App., 22 W. N. C. 358; Marshall's Est., 30 W. N. C. 228; Audenreid's Est., 4 Pa. Dist. R. 501; Keyser's Est., 6 Pa. Dist. R. 181; Wood's Est., 27 Pa. Dist. R. 26; Spring's Est., 216 Pa. 529; Unruh's Est., 248 Pa. 185; Stafford's Est., 258 Pa. 595.

The will was not attested by two disinterested witnesses: Provident L. & T. Co.'s App., 249 Pa. 389; Jeanes's Est., 228 Pa. 537.

Appellant asserts that the residuary devise to the Baughman Memorial M. E. Church is not for a religious or charitable use. However, if this position is not sustained, nevertheless the trust created under the will was active and the Harrisburg Trust Company, one of the trustees, is an interested party, which interest disqualified any of its stockholders from witnessing the will, and therefore the will was not attested by the two disinterested witnesses within the statute. In either event the residuary devise falls, the Baughman Memorial M. E. Church takes nothing under the will, and the collateral heirs, including appellant, are entitled to one-half of the corpus and income of the estate situate in Pennsylvania and all of the proceeds of the real estate situate in New York.

*J. E. B. Cunningham* and *Spencer G. Nauman,* with them *J. H. Reiff,* for appellee.—The will must be construed to carry out the intention of the testator and avoid a partial intestacy: Ostrom v. Datz, 274 Pa. 375; Hofius v. Hofius, 92 Pa. 305; Reimer's Est., 159 Pa. 212; Woodside's Est., 188 Pa. 45; Vance's Est., 209 Pa. 561; Worst v. DeHaven, 262 Pa. 39; Dorris's Est., 63 Pa. Superior Ct. 345.

The gift to the church clearly sought to establish a charitable trust: Price v. Maxwell, 28 Pa. 23; Evangelical Assn.'s App., 35 Pa. 316; Amoles' Est., 32 Pa. Superior Ct. 636.

The trust is passive, terminable at any time by the sole beneficiary: Rodrigue's App., 22 W. N. C. 358; Marshall's Est., 30 W. N. C. 228; Audenreid's Est., 4 Pa. Dist. R. 507; Keyser's Est., 6 Pa. Dist. R. 181; Wood's Est., 27 Pa. Dist. R. 26; Buch's Est., 278 Pa. 185; Millard's App., 87 Pa. 457; Jeremy's Estate, 178 Pa. 477.

The will was properly attested by two competent and disinterested witnesses.

Mrs. Baughman, having taken one-half of the estate under the statutory provisions, there remained the other half which must pass under the will. The widow, as a resident of Pennsylvania, filed her declaration and took her half from the Pennsylvania assets. To make up the remaining half it would be necessary to include all of the New York assets and therefore the New York law has no application to this case because the testator is not giving more than 50% of his total estate to charity: Decker v. Vreeland, 220 N. Y. 326.

OPINION BY MR. JUSTICE SIMPSON, July 8, 1924:

On the distribution of the balance in the hands of the executors of testator's will, his heirs at law and next of kin claimed: (1) That, on a fair construction of the will, the residuary gift, in trust for the Baughman Memorial M. E. Church, was not strictly charitable, and hence was void because the income was given in perpetuity; (2) That the will was not "attested by two credible, and, at the time, disinterested witnesses," as required by section 6 of the Act of June 7, 1917, P. L. 403, 406, and therefore the residuary gift was void; (3) That the heirs were entitled to the whole of the net sum obtained from the sale of certain real estate, located in New York; and (4) That the residuary gift was not of such a character as to justify allowing the church to elect to set aside the trust, and receive the principal of the estate absolutely. Because the court below decided the third of these contentions in favor of both the charity and the widow (who had elected to take against the will), and the other three

in favor of the charity alone, one of the heirs and next of kin took the present appeal.

So far as it is necessary to be quoted in determining these contentions, testator's will provides as follows:

"All the rest, residue and remainder of my estate, real, personal and mixed, and wheresoever located, I give, devise and bequeath to my executors and trustees hereinafter named to be held in trust by them, the net income arising from the same to be paid to the Baughman Memorial M. E. Church of New Cumberland; the disposition of said income to be at the discretion of said Baughman Memorial M. E. Church.

"I hereby authorize and empower my executors and trustees to sell, to dispose of, or to mortgage, any real estate now owned by me, or which may be acquired by me or by my estate; hereby authorizing and empowering them generally to do all things which I might or could do in the management of my own estate.

"I hereby nominate, constitute and appoint my wife, Annie Baughman, of New Cumberland, Pa., and the Harrisburg Trust Company, of Harrisburg, Pa., as executors and trustees of this my last will and testament."

Probably because of what we said in the Evangelical Association's Appeal, 35 Pa. 316, and the cases in its train, appellant admits that, if testator had not added the discretionary clause at the end of the first paragraph above quoted, she could not maintain her contention that the gift was not strictly charitable. She claims, however, that the added words, "the disposition of said income to be at the discretion of said Baughman Memorial M. E. Church," necessarily carry with them a further intention, because, otherwise, the clause would be mere surplusage, which is a conclusion the court should never draw. The rule upon which she relies is not as broad as she contends, however. The court is not so ignorant as not to know that tautology is practiced, finding expression through the pens of scriveners, and in the language of all kinds of documents. Hence the rule is stated to

be that none of the language used shall be treated as surplusage, unless no other construction is reasonably possible: Joyce's Estate, 273 Pa. 404.

Appellant accurately summarizes our decisions as establishing that "a gift to a charitable or religious institution, without declaring the use,......[is] a gift for the uses for which the institution was created, under the inference that the donor adopted or intended such use, because he knew that the institution could not devote his bounty to any other purpose." The present testator knew of this limitation when the scrivener wrote the final clause, which is supposed to create the difficulty, just as well as he knew it when the preceding part of the same sentence was written. He knew, and the church knows, that it could be enjoined if it undertook to use the income for any other purposes than the purely charitable one for which it was chartered: Lawson's Est., 264 Pa. 77, 83. Hence it is not "reasonably possible" to assume that testator intended to give a futile right to use the income in an illegal manner.

Nor is appellant's contention aided by the fact that heretofore the church has not disbursed as much money as it will receive if this trust is sustained. In the domestic and foreign missionary fields alone, it can readily expend more than it will ever get, and these purposes are well within the recognized powers and duties of a Methodist Episcopal Church. If it was relevant and possible to show that the church could not properly have expended, under its charter, the income it will receive from the trust, appellant should have endeavored to so prove; we cannot assume it to be true, especially as against the directions of this testator, who was a member of the church, and knew what it could and should do in this respect. If we are to assume anything on the subject, it must be in accordance with the fact last stated, and with the further well known fact that the probability is not that it will have too much money to properly spend, but that, as has always been the case

with such charities, it will be found to have too little to enable it to fully live up to the standard of the two great commandments.

Was the will "attested by two credible, and, at the time, disinterested witnesses"? One of the two witnesses was a stockholder in the Harrisburg Trust Company, an executor and trustee named in the will; neither witness was interested in, or in any way connected with, the Baughman Memorial M. E. Church, the cestui que trust. Appellant admits,—probably because compelled thereto by our decision in Jordan's Est., 161 Pa. 393,—that the gift was not void because the trust company was named as executor, but alleges that naming it as trustee had this effect. The point we are called upon to decide is, therefore: Is a will valid, so far as concerns its religious or charitable gifts, where one of the two subscribing witnesses is a stockholder in a corporation, named in the will to administer a particular trust for a specified charity, in which neither the witness nor the trustee is interested? This is an important question, for a testator naturally selects, as trustee, an individual who he knows is directly interested in a proper execution of the trust, or a corporation so located as to administer it most advantageously; and, if not a professional man, he frequently selects, as his scrivener and attesting witnesses, those who are connected with one or the other.

Prior to 1855 there were no limitations upon a testator's method of making his will in favor of a religious or other charitable body, save such as applied to all wills, no matter in whose favor they were drawn; but the legislature of that year imposed a restriction by section 11 of the Act of April 26, 1855, P. L. 328, 332, which provides as follows:

"That no estate, real or personal, shall hereafter be bequeathed, devised, or conveyed to any body politic, or to any person in trust for religious or charitable uses, except the same be done by deed or will, attested by two

credible, and, at the time, disinterested witnesses, at least one calendar month before the decease of the testator or alienor; and all dispositions of property contrary hereto, shall be void and go to the residuary legatee or devisee, next of kin, or heirs, according to law; Provided, That any disposition of property within said period, bona fide made for a fair valuable consideration, shall not be hereby avoided."

It will be noticed that the statute does not undertake to define who shall be considered "disinterested witnesses"; doubtless because it was unnecessary so to do, since the meaning of the term was well understood. At that time every person who was called to testify was excluded from so doing, if he had any legal interest, however slight, in the determination of the controversy. If he did not have such an interest, he was a competent or disinterested witness, those words then having the same significance. Probably this explains why there were so few cases in which their actual meaning was challenged, in the years immediately succeeding the passage of the Act of 1855. When, however, the legislature passed the later enabling statutes regarding the competency of witnesses, a new question arose, namely, was the meaning of the phrase "disinterested witnesses" automatically changed by those acts, when they made new classes of persons competent to testify in civil proceedings? It is possible this would have been answered affirmatively, but for the fact that to so hold would have changed the intention of the Act of 1855, which was to exclude, as a matter of law, all who were interested, while the later acts referred to were intended to allow such persons to testify, save under exceptional circumstances, the weight to be given to their testimony to be determined by the trier of the facts. However this may be, our cases on the point began to multiply immediately after the statutes were passed; some counsel apparently thinking the words "disinterested witnesses" would thereafter be held to apply only to those who were legally interested, and

others that they would still include all who were actually so.

The concrete question we are now called upon to consider, namely, whether or not an executor or trustee is a disinterested witness, first squarely arose in Jordan's Est., 161 Pa. 393, and was decided without regard to the difference of professional opinion, to which reference has been made. We there held (page 395) that one named as executor is a disinterested witness within the meaning of the statute, because "he could have no possible interest in the event of the bequest to charity [and because] when the attestation takes place, it is altogether uncertain and contingent whether he will ever be called upon to perform the duties of executor. But, even in the event of his assumption of the duties, he can receive no more than compensation for the services which he may have rendered; and there is no pretence in the present case that this compensation will be to any extent affected by the result of the charitable bequest. He could have had no conceivable motive in unduly influencing the action of the testator, nor interest in the subject-matter of future controversy; and had, therefore, no 'legal interest' which could have disqualified him as an attesting witness. Prior to the passage of the Act of 1855, his competency as a witness to the execution of wills was the rule in this State: Snyder v. Bull, 17 Pa. 54; Loomis v. Kellogg, Id. 60; and that act, as already seen, made no change in the test: Combs' App., supra." This last citation of course refers to Combs & Hankinson's App., 105 Pa. 155.

The reasons thus given apply even more strongly to trustees, where, as here, they are executors also; for, in that event, having, as executors, received a commission on the corpus of the estate, ordinarily they are not entitled, as trustees, to any further commission on it: Section 1, Act of March 17, 1864, P. L. 53. Under such circumstances, it would require ten to twenty years' services to yield to a trustee the amount of commissions

an executor obtains for those of a single year. It had long been held that a trustee was competent to testify unless he was liable for costs (Drum v. The Lessee of Simpson, 6 Binney 478, 481), and it was equally well settled that, in will contests, the parties beneficially interested were the ones liable for costs, because one who acted in a representative capacity was a mere stakeholder, and ordinarily not legally interested in the controversy: Koppenhaffer v. Isaac, 7 Watts 170; Royer's App., 13 Pa. 569; Arnold's Est., 252 Pa. 298. Moreover, in Snyder v. Bull, supra, the witness, whom we held entitled to testify, was a trustee (17 Pa. 56) as well as an executor, and hence we may not inaptly repeat here, that the Act of 1855, "as already seen, made no change in the test."

Thus matters stood when Kessler's Estate, 221 Pa. 314, came up for decision. In it, we approved the ruling in Jordan's Est., supra, but held, for the first time, that, if an "attesting witness be interested as legatee or devisee under the will, or is to derive a pecuniary benefit or advantage from any part of it, or if he is interested, at the time of attestation, in a religious or charitable institution to be benefited thereby, he is not disinterested, within the meaning" of the Act of 1855. The profession was quick to grasp the effect of this unexpected ruling, and the decision was rapidly followed by a number of similar cases, which, of course, received the same treatment. To prevent this, as to future deeds and wills, the legislature passed the amendatory Act of June 7, 1911, P. L. 702, since reënacted, so far as wills are concerned, by section 6 of the Wills Act of June 7, 1917, P. L. 403, 406. In each of those statutes the definition of a disinterested witness is in substance the same, the language of the Act of 1917 being as follows: "A disinterested witness, within the meaning of this section, is a witness not interested in such religious or charitable use,—this section not being intended to apply to a witness inter-

ested in some other devise or bequest in the same instrument."

This definition casts Kessler's Est., supra, and the cases in its train, into the discard, so far as future wills are concerned. Since no new disqualifications are imposed by the amendment, mere executors and trustees, who were disinterested witnesses under the Act of 1855, continued to be so under the Acts of 1911 and 1917. Indeed, the reason for so holding is greater under these statutes, for where the trustee only administers the charity, his interest, if he can be said to have any, is rather antagonistic than otherwise, since every dollar he receives, as commissions, reduces pro tanto the amount going to charity. In reality such a trustee has no interest, for he only does, and receives pay for so doing, what some trustee, official or otherwise, would be compelled to do in order that the trust should be administered. A fortiori, stockholders of corporate trustees must be considered disinterested under like circumstances, since a possible right to a portion of a trustee's commissions, cannot be as great an interest as a right to the whole of the commissions.

The conclusion to be drawn from this rather lengthy review of the statutes and decisions, is that a disinterested witness is one "not interested in [a] religious or charitable use" declared by the will, and therefore that an executor or trustee, who merely collects the assets, manages the estate, and pays the net balance to or for the charity, is disinterested.

It is urged, however, that in Palethorp's Estate (Provident Life & Trust Company's Appeal, 249 Pa. 389; and Stewart's Appeal, 249 Pa. 411), which arose after the passage of the Act of 1911, we reached an opposite conclusion; happily no such mistake was made. In that estate, one of the two subscribing witnesses to the will was a stockholder in the Provident Life & Trust Company, which was named as trustee for such of the charitable gifts as were to be held in trust. The first of those

gifts to be considered, was of the sum of $50,000, upon an active trust, the net income to be used "for the maintenance and care of 'The Palethorp Memorial Collection' [of paintings], and for the purchase of paintings and works of art from time to time to add to that collection," the unexpended residue of the estate, if any, being given to "such charitable institutions as my trustees may deem wise." It was held that this gift, and the gift of the residue, were void on the ground that the trustee was interested, because the powers given to it were "not the usual duties imposed upon a financial corporation appointed as trustee to care for the principal and pay income either to charities or individuals," but "amount to little less than a gift of the income itself. It might fairly be said that this trustee had been favored with a limited power of appointment over income." The only other charitable gift which was held void, was that of $10,000 for the Pennsylvania Academy of Fine Arts, of which corporation the witness was a stockholder.

It will be observed that the fact of his having a stockholding interest in the trustee, so far as concerns the usual duties appertaining to that office, was not asserted to be an objection to the validity of these testamentary gifts to charity, which were defeated because there were superadded, to those usual duties, certain rights which caused them to "amount to little less than a gift of the income itself." A like power to select the charities to be benefited appeared in Arnold's Est., 249 Pa. 348, which arose before the Act of 1911 was passed, and the same conclusion was there reached. Neither the Act of 1911, nor that of 1917, affects this matter, which rightly resulted in the exclusion of the witness in both cases, since the reason for it was within the spirit of all three of the statutes. Surely one who is given powers substantially equivalent to those possessed by the testator himself, cannot be said to be disinterested, so far as those delegated powers are concerned.

No other decision of ours affects the conclusions stated, and we therefore hold: (1) That, under the Act of 1917, an attesting witness may be named as executor, and still be a "disinterested witness" within the meaning of the statute; (2) That the same is true as to a trustee named, unless there are given to him such additional powers, as trustee, as make him interested in more than the caring for and investing of the trust funds, and collecting the income and paying it to the charities entitled to receive it; and (3) That where an attesting witness is a stockholder in a corporation appointed to act as executor or trustee, the same tests will be applied in determining whether or not he is disinterested.

In the instant case, the authorization to the executors and trustees to sell and mortgage real estate left by testator, and "generally to do all things which I might or could do in the management of my own estate," gives to them only such powers as properly pertain to the trust itself, and which, by virtue thereof, or on approval by the court, may be exercised by any trustee. It follows that this provision does not operate as a disqualification of the attesting stockholder; indeed, it was not so contended by appellant.

When testator died he left certain encumbered realty in the State of New York. The mortgagees threatened to foreclose; to avoid this, all the parties in interest entered into an agreement that the properties should be sold, and the net amount realized carried into the present account, for purposes of distribution. It does not appear when the agreement was made; but the property was sold in accordance with it, and the court below distributed one-half of the proceeds to the church, one-third to the widow and the balance to the heirs, including appellant. The latter now claims that the whole of this fund should have been awarded to the heirs.

By the law of New York, a widow may take either one-third of her husband's real estate (N. Y. Consol. Laws, chap. 52, par. 190), or whatever property is given her

under his will; but she must make her election to take
the one or the other: N. Y. Consol. Laws, chap. 52, par.
200.    The widow here declared her election in due
course; it covered all the estate left by testator, but was
made and recorded here, and not in New York. It is
also provided by another of their laws, that a widow will
be deemed to have taken under her husband's will "un-
less within one year after the death of her husband, she
enters upon the lands assigned to her for her dower,
or commences an action for her dower"; the
time may be extended, however, by an order of court,
indexed and recorded: N. Y. Consol. Laws, chap. 52,
par. 201.  Because there was no proof of any of these
facts, appellant claims that she must be deemed to have
elected, so far as concerns the New York property, to
take under the will, which itself gave her no interest in
those lands.    As already stated, we are not advised
whether or not the agreement for their sale was made
during the year following testator's death, and hence do
not know whether or not it was necessary for her to take
the steps referred to, if she wished to get the benefit of her
election.  All we know is that at some unstated date, an
agreement for a sale was duly made and later consum-
mated, the parties agreeing that "the ownership of the
fund [should] be determined by the court," and no res-
ervation was made that it should be distributed as if the
fund were still land.  So far as appears, not only may
the negotiations have been made during the year, but the
present contention may not have been made until after
the conversion.  Not having been given sufficient data to
enable us to reverse the court below, we must assume its
conclusion was in accord with the law and the facts.

A suggestion is made in the brief that the widow
should have been awarded the one-third for life only.  If
this is the law of New York, it should have been proved
as a fact; since it was not, we must, under well settled
principles, assume that the law there is the same as here

(Musser v. Stauffer, 178 Pa. 99, 105), and here a widow gets an absolute estate.

The silence of appellant's brief leaves us in doubt as to what is her contention regarding the one-half of the New York fund awarded to the church. Testator's widow having survived him, the law of that state says his "devise or bequest [to charity] shall be valid to the extent of one-half [of his estate], and no more": N. Y. Consol. Laws, chap. 18, par. 17. In Decker v. Vreeland, 220 N. Y. 326, it was held that, in estimating the one-half referred to, the whole estate, wherever situated, is to be valued, debts, but not administration expenses, are to be deducted, the amount the charity has received elsewhere is then to be deducted from one-half of the total valuation, as thus ascertained, and the charity, or its trustee, is entitled to receive the balance out of the New York assets. The widow's election gave to her, and she received, one-half of the net assets in Pennsylvania; there does not appear to have been any other property except that in New York, one-half of the proceeds of which, under Decker v. Vreeland, supra, was, therefore, properly awarded under the charitable devise.

The final question for decision is: Is the gift in trust of such a character as to permit the church to elect to set aside the trust and receive the principal of the estate absolutely? Prior to 1869 there were many conflicting decisions on this subject. In Dodson v. Ball, 60 Pa. 492, they were grouped in startling array; but in that case, and continuing steadily until the present time, the true rule has been followed. Perhaps our latest decisions on the point are Fox's Est., 264 Pa. 478, and Field's Est., 266 Pa. 474. In the instant case, the court below has not applied the true test, and appellant, in contesting its conclusion, has gone equally wrong. Relying on Wood's Est., 261 Pa. 480, the court said the trust is a passive trust,—which is a mistake: Deniston v. Deniston, 263 Pa. 224,—that its continuance is "contingent on the will and whim of the beneficiary," and hence

that the church is entitled to have awarded to it absolutely the corpus of the share directed to be held in trust. This wholly overlooks a vital point in Wood's Est., supra, which is that the trust cannot be terminated unless there is "no ultimate purpose of any kind requiring the continuance of the trust," expressed in it, or which "can be implied from its terms, except the mere payment of the income to the cestui que trust." As we shall hereafter show, there is such a purpose in the present case.

On the other hand, appellant claims that, since active duties are imposed on the trustees, the trust cannot be ended on the election of the church. Of course, "the placing of the estate in a trust, and investing the trustee with authority" over it, indicates an intent that the trust shall not be terminated (Field's Est., supra, page 478); but the character of the trustee's duties, while the trust is in existence, does not conclusively determine that question. Thus, on a gift of a property to A., upon an active trust for B. for life, with remainder to C., B. cannot end the trust, without the consent of C., and not even then unless no other legal reason appears for keeping it alive; as, for instance, where the life estate in B. is upon a spendthrift trust. So, too, on a gift of a property to A., in trust to suffer and permit B. to occupy it for life, or to receive the rents from it during that period, with remainder to C., B. cannot terminate the trust, although the trustee's duties are passive, but B. and C. can, unless there are other legal reasons for keeping it alive. The true rule is that although the duties imposed on a trustee indicate that the testator had a purpose in establishing the trust, and the burden of proving that no such purpose exists rests on him who asserts it, yet, in its ultimate analysis, the question whether or not the court may end the trust, is not conclusively determined by the character of the trustee's duties, but depends upon whether or not (a) all who are or possibly may be interested in the property, are sui juris; and (b) all have consented to the termination of the trust; and (c) it is clear that

no other legal reason exists for its maintenance. In Johnson v. Provident Trust Co., 280 Pa. 255, we fully set forth our reasons for so concluding; it is not necessary to repeat them here.

Whether or not the third of the above requirements had been met in the instant case, depends upon the application of fundamental legal principles: Dodson v. Ball, supra. So long as a devisor or settlor, where no policy of the law is infringed, may do as he pleases with his own, so long, with like restrictions, he may condition or limit his gift, and so long also his conditions or limitations must be carried into effect, unless they transcend that policy, or his purpose has been otherwise fully conserved: Holbrook's Est., 213 Pa. 93. A substituted method is not his method, and is not permissible, unless necessary to give effect to his expressed purpose. In the present case there was no attempt to show, and no argument has been made to prove, that testator's purpose in creating the trust has been fully accomplished. Indeed, it requires but a slight acquaintance with human nature, as exemplified in the governing body of church organizations, to know that unless halted the Macedonian cry for help would probably soon exhaust every available fund, and leave this memorial church without an endowment. This fact was doubtless well known to testator, who, as already stated, was a member of the church; to prevent such a possibility was probably his reason for creating a trust of his residuary estate, and giving only the income to the church; thus ensuring, as far as he could, the perpetuity of his memorial. Transferring the principal to the church, would entirely defeat this purpose, and hence cannot be permitted.

It follows that the decree should be amended by awarding to the trustees, and the survivor of them, so much of the estate as passed under the residuary clause, to be held by them upon the trusts set forth in the will. As so amended, the decree of the court below is affirmed and the appeal is dismissed, but without costs in this court.