### Pender Estate

*John J. Lombard, Jr.,* and *Walter E. Nelson, Jr.,* for accountants.

*Philip A. Bregy,* for charitable beneficiary.

*James W. Sutton, Jr.,* Assistant Attorney General, for Commonwealth as parents patriae.

TAXIS, P. J., September 20, 1974.—The first account of G. Ruhland Rebmann, Jr., and The First Pennsylvania Banking and Trust Company, testamentary trustees, was examined and audited by the Court on March 6, 1974.

The reason for the filing of the present account is the death of the last surviving life beneficiary, Dorothy Clark Brewer, on November 12, 1971.

The account as filed and the supplemental bringdown account show a balance of principal of $111,580.48 and income of $11,660.58 and invested income of $10,284.33, composed of the securities set forth on page 2 of the account. By supplemental stipulation of counsel filed on May 1, 1974, the court was advised that the actual corpus of the trust as of the close of business on February 28, 1974, was $176,941. A list of the assets and their market value on that date was also submitted.

The transfer inheritance tax assessed has been paid.

All parties having, or claiming, any interest in the trust, of whom the accountants have notice or knowledge, are stated to have received written notice of the audit in conformity with the rules of court.

Accountants have submitted claims for commissions and compensation as follows:

1. The accountants claim interim commission from principal in the amount of $5,707.42 which is based on the present account value of the principal to be divided if allowed by the court, $3,804.95 to the corporate trustee and $1,902.47 to the individual trustee.

2. In the event the court does not allow interim commissions, G. Ruhland Rebmann, Jr. is tendering his resignation as trustee and the claim is made in that event in the amount of $3,170.78 for his terminal commission.

3. In the event the court grants the request of the Pennsylvania Institute of the Pennsylvania Hospital, both trustees claim terminal commissions in the amount of $9,512.36, or five percent of the value of the corpus of the trust.

| | Requested Interim Compensation | Requested Terminal Compensation | Total |
|---|---|---|---|
| Bank | $3,804.95 | $ 9,512.26 | $13,317.21 |
| Mr. Rebmann | $1,902.47 | $ 3,170.78 | $ 5,073.25 |
| Total | $5,707.42 | $12,683.04 | $18,390.46 |

Counsel for the parties have filed with the court a stipulation of facts and the facts herein recited are taken from that stipulation.

Alice M. Pender died on December 31, 1947, leaving a will dated April 16, 1937, which was duly probated, and G. Ruhland Rebmann, Jr. and The Pennsylvania Banking and Trust Company (formerly The Pennsylvania Company for Banking and Trusts) qualified as executors. By Item Fifth of her will, testatrix

directed that her residuary estate be held by her trustees in trust for the benefit of Dorothy E. Clark (later Brewer) for her lifetime subject only to an annuity of $40 per month to the brother of testatrix, Miles L. Matthews, for his lifetime. Miles L. Matthews died on September 12, 1948, and Dorothy E. Clark Brewer, the life tenant, died on November 21, 1971. Her death was the occasion for the present account. Item Fifth of the will, in parts here pertinent, provides as follows:

"(c) Upon the death of the said MILES L. MATTHEWS and the said DOROTHY E. CLARK, I do direct that the trust shall continue but that all of the income shall then be paid to the INSTITUTE OF THE PENNSYLVANIA HOSPITAL which is now maintained at 49th and Market Streets in the City of Philadelphia, to be used, however, exclusively for research along the lines of emotional maladjustment, with particular reference to the period from forty to sixty years, in the lives of men, or if this line of research has been exhaustively followed, then the income may be used for any other line of scientific inquiry which may be recommended by the Director."

The will contained no reference to compensation for the trustees. Moreover, no separate inter vivos agreement between testatrix and the trustees exist as to their compensation.

Mr. Rebmann and the bank were awarded compensation for their services upon the executors' first account in the amount of $4,080 principal commission and $65.34 income commission. By adjudication of Holland, P. J., dated October 21, 1948, the residuary estate in the approximate amount of $60,000 was awarded to Mr. Rebmann and the bank as trustees of testamentary trust and from October 1948 to the present the trustees have administered the trust

pursuant to the terms of the will. During the period of the trustees' management, the corpus has grown from approximately $60,000 to its present value of over $176,000.*

The trustees, for the entire administration of the trust, have received only income commissions of five percent, which were divided two-thirds to the corporate fiduciary and one-third to Mr. Rebmann.

Trustees have requested interim commissions on principal during the 26 years of administration of this trust from 1948 to the present accounting stated to October 12, 1973. They claim interim commissions in the amount of $5,707.42 which is based on the present account value of the principal to be divided (if allowed), $3,804.95 to the corporate trustee and $1,902.47 to the individual trustee. In support of this request, accountants submitted the testimony of William T. Hord, of the corporate fiduciary, G. Ruhland Rebmann, Jr., Esq., the individual trustee, and Robert P. Leiby, Jr., a trust officer of The Fidelity Bank. Very briefly, this testimony (which the court finds to be highly credible) is that the trustees are not getting paid what their services are worth.

The court has given considerable thought to the request of the trustees. Their appeal has a very persuasive ring to it. The court, however, reaffirms what it said in Fenstermacher Estate, 51 D. & C. 2d 701, 92 Montg. 324, i.e., that interim commissions on principal are not allowable in charitable or perpetual trusts. The court has been unable to find any Pennsylvania authority for the proposition but the rule seems proper and is, in the court's view, the wise and correct conclusion.

---

* No doubt the present value of corpus is much less in light of the sharp decline in the market.

Mr. Bregy, in his excellent brief, summarizes the reason for the rule as follows:

"In a trust for individual beneficiaries the total amount of interim and terminal principal commissions must not exceed what would be allowed as terminal commissions. Hence, total principal commissions, whenever paid in such a case, would not normally exceed a total of five percent of the principal. Where the trust is perpetual, however, a periodic allowance of principal commissions would tend to deplete the principal to the point of exhaustion. If a principal commission of three percent is allowed now, there would seem to be no logical reason why another three percent commission would not be allowed again twenty-six years hence (which would already take us over the usual five percent limit) and a further three percent commission allowed every twenty-six years into the indefinite future until the principal would be reduced to pennies."

The request for interim principal commissions is, therefore, refused.

The individual trustee has advised the court that if interim principal commissions are denied (and they have been denied), he then resigns his trusteeship and claims terminal principal commission of $3,170.78.

Section 390 of the Restatement 2d, Trusts, provides in part, that "the trustee of a charitable trust is entitled to compensation out of the trust estate for his services as trustee." The comment to section 390 expands on this phrase by stating that "The rule as to compensation of trustees of a charitable trust is the same as the rule as to compensation of trustees of a private trust." It is important to note that not one word is said concerning compensation from principal. The better rule would seem to restrict the Restate-

ment rule to income. So construed, the court has no quarrel with that language. See IV Scott, Trusts §390, (3rd Ed.).

The account shows that there is a balance of income of $5,301.59 and an item invested income of $10,284.33, totaling $15,594.92 income presently distributable beyond that due the estate of the life beneficiary.

The requested interim commissions of the bank and Mr. Rebmann total $5,707.42. The court is satisfied that they should be paid for their excellent services to this trust and, therefore, the request for these commissions is herewith *allowed* but to be paid *out of income and not principal.* That leaves, therefore, only a question of whether terminal commissions should be paid to the bank and Mr. Rebmann out of the balance of the income for distribution. The balance of income, after payment of interim compensation of $5,707.42, is $9,887.50. The requested terminal compensation is $12,683.04 ($9,512.26 for the bank and $3,170.78 for Mr. Rebmann). The requested terminal commissions far exceed the income presently available, but in light of the services performed by these fiduciaries the court is satisfied that terminal compensation in the amount of $4,000 should be and is herewith awarded ($3,000 to the Bank and $1,000 to Mr. Rebmann) payable *out of income.* The court, at this time, expresses to the bank and to Mr. Rebmann its thanks and gratitude for outstanding services rendered to this trust over these many years.

One final matter requires a ruling. The Pennsylvania hospital has urged the court that this trust be terminated and the principal awarded to the hospital as trustee, to be invested in units of its Consolidated

Investment Account and income *only* used for the purposes set forth in testatrix' will. Item 15 of the stipulation relevant to this question reads as follows:

"15. The Pennsylvania Hospital maintains its endowment in its Consolidated Investment Account which presently has assets of approximately Fifteen Million Five Hundred Thousand Dollars ($15,500,000). This Account is managed by Provident National Bank which charges for its custodial and investment services an annual fee paid entirely from income, at the rate of One Dollar ($1.00) per Thousand Dollars of principal.

"The Account is unitized and an appropriate number of units are assigned to each restricted gift so that the principal and income representing such gift can be easily ascertainable at any time. In cases where the terms of the gift restrict the Hospital to the income for a specified purpose, such restrictions are honored, as required by law, and only the income from the units assigned to the gift is used for the specified purpose.

"If the principal of the Pender Trust is not turned over to the Hospital it will be added to the aforesaid Consolidated Investment Account, an appropriate number of units will be assigned to it in terms of current values, and the income attributable to those units will be used for the purposes set forth in Item FIFTH (c) of the Will."

Earlier cases seem to indicate that termination of a charitable trust should be refused on the theory that termination of such a trust would put the fund beyond the control of the court so that the charitable trust could be unenforceable. Cases reflecting this view are Unruh's Estate, 248 Pa. 185, and Baughman's Estate, 281 Pa. 23. These cases pose no problem for this court to accede to the request of

Pennsylvania Hospital. The court can, and herewith does, insert, as a condition of termination, a provision that continuing jurisdiction over this fund is retained by this court. Cf. Craig Estate, 356 Pa. 564. A somewhat similar situation was accomplished in a recent case involving cemetery trusts: Sundry Cemetery Trusts—Termination, 22 Fiduc. Rep. 171. See also Dolfinger Trust, 45 D. & C. 2d 404, 18 Fiduc. Rep. 275.

In paragraph 15 of the stipulation it is provided that Provident National Bank's charge for administering the Pennsylvania Hospital's investment account is $1 per thousand dollars of principal per year. If the trust fund earns an average of five percent, this is equivalent to a yearly charge of two percent per year of income. In contrast, however, if the fund remains with the present trustees and with no additional commissions at all, the costs would amount to five percent of income and would be substantially higher if periodic commissions are allowed. The court concludes that the practical solution to this predicament is to award these funds to the Pennsylvania Hospital to be kept separate but may be invested in units of the hospital's investment account and supervision over this trust is reserved in the Orphans' Court Division of the Court of Common Pleas. It might well be that an award to an institution, as here, may not be appropriate in all cases, but it certainly should be favored in cases where an institution is an established one with a sizeable endowment fund administered pursuant to law. Much more will be available for the charitable purposes if the Pennsylvania Hospital is allowed to administer these funds for itself and thereby relieve the independent trustees of a duty which has become onerous and, indeed, unprofitable.

Subject to distributions heretofore properly made,

the net ascertained balance for distribution is herewith awarded to the Pennsylvania Hospital to be added to its Consolidated Investment Account, with express condition that continuing jurisdiction over this fund is retained by this court, and that all realized capital gains be retained in principal and not allocated to income as is authorized by Corporation Not-for-Profit Code of November 15, 1972, P. L. 885 (No. 271), 15 Pa. S. §7101, et seq. See also Fiduciary Review, March 1973, Page 4.

Power and authority are given the accountants to make the necessary assignments and transfers of the unconverted investment securities herein awarded in kind.

The account is confirmed, and it is hereby ordered and decreed that G. Ruhland Rebmann, Jr. and The First Pennsylvania Banking and Trust Company, testamentary trustees, as aforesaid, forthwith pay the distributions herein awarded.

*And now*, September 20, 1974, this adjudication is confirmed nisi.